UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IRMA WHITFORD,**<br><br>Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>Defendant. | Civ No. 2:13-cv-05469 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Irma Whitford brings this action pursuant to 42 U.S.C. § 405(g), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying Whitford's application for a period of disability and Disability Insurance Benefits ("DIB"). For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

**I.    LEGAL STANDARDS**

    **A.    The Five-Step Sequential Analysis**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step

1

four.  *Id.* §§ 404.1520(d), 416.920(d).  In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity ("RFC") to perform past relevant work.  *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f).  The claimant bears the burden of proof at each of these first four steps.  At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC.  20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### B. Standard of Review

For purposes of this appeal, the court's review of legal issues is plenary.  *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  The factual findings of the administrative law judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings."  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations.  *See id.* (*citing* 42 U.S.C. § 405(g)).

## II. BACKGROUND

Since emigrating from Colombia in 1990, the Plaintiff worked primarily as an order picker.  Administrative Transcript ("Tr.") at 27.  Plaintiff allegedly experienced a psychotic break in 2005.  Tr. at 213.  She began seeing her treating psychiatrist, Dr. Claudio Dicovsky, in July of 2005.  Tr. at 311.  Dr. Dicovsky diagnosed the Plaintiff with bipolar disorder shortly thereafter.  Tr. at 213.  Plaintiff continued to work despite her diagnosis until her last employer relocated in November of 2008, and she stopped work due to the relocation.  Tr. at 28.

On February 11, 2011, Plaintiff applied for benefits, alleging a disability beginning December 10, 2010, based on her bipolar disorder and anxiety disorder.  Tr. at 153-59.  Plaintiff's application was denied on April 13, 2011, and again upon reconsideration.  Tr. at 98-102.  The Plaintiff's request for a hearing was granted, and a hearing was convened on May 17, 2012.  Tr. at 111-112.  ALJ Donna A.

Krappa denied Plaintiff's claim, finding that her alleged disability existed at the same level of severity during the time she was working. Tr. at 28-29.

### A. Summary of the Record

The record includes medical records and evaluations from a treating psychiatrist and a non-examining consultant physician. It also includes Plaintiff's testimony about her condition and the Plaintiff's husband's observations and testimony about Plaintiff's condition. Finally, it includes testimony from a vocational expert.

Plaintiff's sole treating psychiatrist, Dr. Claudio Dicovsky, produced treatment notes dating back to September of 2007. Dr. Dicovsky's treatment notes indicate that the Plaintiff had "ups and downs" both before and after her last job. Tr. at 367, 373. The notes go on to state that the Plaintiff was "stable" and "feels better" as recently as March 8, 2011 and April 16, 2012. Tr. at 365, 367. On November 21, 2011, the notes mention that Plaintiff experienced 4 days of depression, and Dr. Dicovsky stated that she is unable to work. Tr. at 366. Dr. Dicovsky completed a medical source statement in May of 2012. In it he noted that the Plaintiff had mood swings and auditory hallucinations and that her prognosis was fair. Tr. at 311. He also indicated that Plaintiff would be unable to meet competitive standards in many mental abilities needed to perform work. Tr. at 313-14. Furthermore, the statement indicated that he anticipates the Plaintiff to be absent from work more than four days per month because of her condition. Tr. at 315.

The Plaintiff's claim was examined by a State Disability Determination Services non-examining consultant, Dr. Alexander Golin. Dr. Golin reported on April 4, 2011 that Plaintiff has moderate limitation in activities of daily living, social interactions and concentration, persistence and pace, but no episodes of decompensation. Tr. at 300. He reported that she could groom herself, prepare simple meals, do light housekeeping, drive on a limited basis, shop in stores, manage money, and chat with social contacts. Tr. at 306. He also reported that she was able to understand, remember, concentrate, persist, and adapt adequately to perform simple work tasks. Tr. at 306.

The record contains Plaintiff's testimony about her activities and working conditions at her last job. The Plaintiff testified that she does not drive because driving causes panic attacks. Tr. at 40. She stated that when she has a bad day she cannot get out of bed until midday. Tr. at 47. The Plaintiff testified that she can shower and prepare simple meals but that her husband takes care of laundry, grocery

shopping, and cooking. Tr. at 47-48. She says that her last job allowed her to lay down in her car during her scheduled breaks, but she was not allowed to take unscheduled breaks. Tr. at 45, 51. She flew to Colombia approximately one month before her administrative hearing to visit her sick mother and stayed for 10 days. Tr. at 48. She claims to have panic attacks daily, which are not precipitated by any stimulus. Tr. at 50.

The record contains testimony about the Plaintiff's activities by the Plaintiff's husband, John Whitford. Mr. Whitford's testimony is supplemented by a "mood diary" which Mr. Whitford used to track her medications, doctor visits, and mood. Tr. at 317-363. He testified that the Plaintiff socialized to the extent that she talked on the phone often with family in Colombia and her sister, and she received occasional visits from her brother-in-law. Tr. at 60. He noted that the Plaintiff has travelled to see her mother approximately five times since 2004 but that flying causes her anxiety. Tr. at 62. Under questioning from Plaintiff's attorney about her last employer, he claims to have negotiated special arrangements for Plaintiff to take unscheduled breaks when needed due to her illness. Tr. at 65.

The record also contains the testimony of vocational expert Kathy Wilson. Tr. at 71-72. Wilson testified that a person with Plaintiff's limitations could work in her previous job as an order picker, provided that she did not have to take too many unscheduled breaks or take more than 2 sick days a month. Tr. at 72-73.

### B. The ALJ's Decision

At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since December 10, 2010, the alleged onset date of her disability. At step two, the ALJ found that the Plaintiff has the following severe impairments: affective disorders (bipolar disorder/anxiety).

At step three, the ALJ concluded that the Plaintiff's impairments do not meet or medically equal one of the impairments found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. In order to pass step three, Plaintiff would have had to demonstrate a least two of the following: "marked restriction in the activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each for an extended period." Tr. at 25. The ALJ found that the Plaintiff only had moderate difficulties in each of these spheres and no episodes of decompensation. Tr. at 25-26.

At step four, the ALJ determined that the Plaintiff has the RFC to perform the exertional demands of a full range of work at all exertional levels, but as for the mental demands of a job, the ALJ found that the Plaintiff could only perform jobs that are "unskilled and repetitive" and "low stress." Tr. at 26. The ALJ reached this conclusion by considering the intensity, persistence, and limiting effect of the Plaintiff's symptoms. Tr. at 27. Where there was an absence of objective evidence to substantiate the intensity, persistence, and limiting effect of the symptoms, the ALJ made credibility determinations. Tr. at 27. In this case, much of the evidence was subjective, including the testimony of the Plaintiff, her husband, and her physician, and the Plaintiff's mood diary.

The ALJ went on to conclude that Plaintiff is capable of performing her past relevant work as an order picker. Tr. at 29. The ALJ based her finding in part on the testimony of the vocational expert, Kathy Wilson. Wilson concluded that the claimant's prior work as an order picker was unskilled and performed at the light level of exertion. Tr. at 29.

## III.   DISCUSSION

The Plaintiff presents three arguments. First, Plaintiff argues that the ALJ erred in giving Dr. Dicovsky's opinion little weight while assigning great weight to Dr. Golin's opinion. Second, the Plaintiff argues that the ALJ incorrectly discredited the testimony of the Plaintiff and her husband. Third, the Plaintiff argues that the hypothetical question posed to Ms. Wilson did not take into account all of the Plaintiff's mental limitations and thus the ALJ's determination of the Plaintiff's RFC was flawed. All three of these arguments fail for essentially the same reason: the medical records do not indicate a worsening of Plaintiff's medical condition during the period she worked compared to the period thereafter.

### A.   Rejection of the Treating Psychiatrist's Opinion

Plaintiff argues that the ALJ erred in weighing the opinion of the consultant, Dr. Golin, over that of the treating psychiatrist, Dr. Discovsky. The ALJ gave Dr. Dicovsky's medical source opinion "little weight" because it "simply [is] not supported by the documented record of treatment or objective findings." Tr. at 29. The ALJ credited Dr. Golin's opinion that the claimant has "moderate limitations in the activities of daily living, social interactions, and concentration, persistence and pace" because Dr. Golin's conclusion was supported by other evidence on the record. *Id.*

5

The opinion of a treating psychiatrist is usually entitled to great weight, especially when such an opinion is based on treatment and observation of a patient over a prolonged period of time. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*citing Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)). However, the determination by a treating psychiatrist that a claimant is disabled is not dispositive on whether a disability truly exists. 20 C.F.R. 40.1527(d)(1); *Adorno v. Shalala*, 40 F. 3d 43 (3d Cir. 1994) (*citing Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990)). Furthermore, controlling weight is required only if the treating psychiatrist's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a] case record." 20 C.F.R. 404.1527(c)(2). An ALJ must consider the following factors when finding that a medical source opinion is not due controlling weight: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527(c)(1-6). "Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d at 429).

The ALJ did not err in weighing the opinion of Dr. Golin over that of Dr. Dicovsky. Although Dr. Dicovsky had a long relationship with the patient, his conclusions were not supported by his own medical records. The records indicated that there was no deterioration in the Plaintiff's condition between the time she was working and the claimed onset of her disability. The objective findings referenced by the ALJ include that the Plaintiff left her last job for reasons not related to her impairment. Since the loss of her job, Dr. Discovsky's records noted repeatedly that Plaintiff has "ups and downs." Tr. at 28. His records note that she was "stable" in March 2011 and was "doing better" in April 2012. Therefore, the ALJ's conclusions that there "was no significant deterioration in the claimant's medical condition since her layoff from work" and that "the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date" were supported by substantial evidence. The ALJ accordingly committed no error in according Dr. Discovsky's opinion little weight.

Furthermore, the evidence of Plaintiff's other activities supported the ALJ's discrediting of Dr. Discovsky's opinion. Tr. at 27. See 20 C.F.R. § 404.1527(c)(3); SSR 96-2p. For instance, her symptoms and alleged limitations did not stop her from taking an extended trip to Colombia, albeit with the accompaniment of her husband, to help care for her mother in 2012. Tr. at 48. Her anxiety did not prevent

6

travel on a plane and over land, albeit with the assistance of her husband. Tr. at 62. Plaintiff's function reports shows that she could groom herself, prepare simple meals, drive on a limited basis, do light housework, shop in stores, manage money, and chat with social contacts. Tr. at 306. While her depression and anxiety may have limited her activities, her actions constituted substantial evidence that she was only moderately disabled.

The Plaintiff also argues that assigning great weight to Dr. Golin's assessment was improper because his assessment was performed without the benefit of all the treatment notes or the later medical source statement of Dr. Dicovsky.

State agency consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i); SSR 96-6p. Their opinions may constitute substantial evidence in support of the Commissioner's findings. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Indeed, their opinions may override that of treating physicians. *Alexander v. Shalala*, 927 F. Supp. 785, 795 (D.N.J. 1995) (*citing Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993)), *aff'd*, 85 F.3d 611 (3d Cir. 1996) (table); *see also Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011) (upholding an ALJ's decision to credit the opinions of State agency doctors even over that of a treating physician).

In this case, the fact that Dr. Golin did not have the benefit of all the treatment notes or Dr. Dicovsky's medical source statement did not make it improper for the ALJ to accord Dr. Golin's opinion great weight. As noted, the medical records did not indicate a worsening of symptoms. Therefore, the ALJ did not err in giving weight to Dr. Golin's opinion.

### B. The ALJ's Credibility Determination

The ALJ discredited the testimony of the Plaintiff and her husband, as well as the husband's mood diary submission, to the extent that they conflicted with the ALJ's determination of the Plaintiff's RFC. Tr. at 28-29. The ALJ cited again to the lack of exacerbation of the Plaintiff's symptoms. Furthermore, the ALJ gave limited weight to the husband's testimony "because of [its] high degree of subjectivity, and lack of medically acceptable standards." Tr. at 29. As to Mr. Whitford's mood diary, the ALJ reasoned that even if such subjective evidence were credible, the observations never show "high moderate" or "severe" mania or

7

depression.[1]  Tr. at 29.  The Plaintiff contends that the ALJ improperly rejected the testimony and mood diary because all were supported by the evidence of record.  The court disagrees.

An ALJ carries the responsibility of making credibility determinations.  *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981).  A four-part analysis governs an ALJ's credibility determination of a claimant's subjective complaints:

> (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain may support a claim for disability benefits, and may be disabling; (3) that when such complaints are supported by medical evidence, they should be given great weight; and finally (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount [the] claimant's pain without contrary medical evidence.

*Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).  However, an ALJ may discredit subjective complaints.  If that is the case then

> the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.  The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work.

*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999).

The ALJ properly performed her responsibility in seriously considering the Plaintiff's testimony.  While the ALJ found that the Plaintiff's claimed symptoms could reasonably be supported by the diagnosis of bipolar disorder, the testimony as to the "intensity, persistence, and limiting effects of her symptoms" was not credible.  Tr. at 28.  Moreover, the treatment notes, which indicate no worsening in the

---

[1] The specific finding that there are no days with "high moderate" mania or depression in the mood diary was incorrect.  The mood diary did note "high moderate" depression on May 19, 2011 and September 4, 2011.  The mood diary did note "high moderate" mania on July 23, 2011 and January 21, 2012.  Tr. at 317, 320, 322, 324.  Nevertheless, this error is not material.

8

Plaintiff's condition between the time of her layoff and her claimed onset date, are inconsistent with Mr. Whitford's opinion that his wife has severe limitations.

The Plaintiff argues that the ALJ failed to account for Mr. Whitford's testimony that the Plaintiff's past employer was "understanding and tolerant," having given her the opportunity to take long naps in the car. She also alleges that the ALJ overlooked her husband's testimony that she had two meetings with supervisors and human resources where they discussed whether she could continue working. The ALJ explicitly considered this testimony. Tr. at 28.

Substantial evidence supports the ALJ's decision to discredit the testimony. A lack of documentation about the alleged meetings with human resources undermines that testimony. Plaintiff's testimony that she did *not* take unscheduled breaks undermined Mr. Whitford's testimony that the previous employer did allow unscheduled breaks. Tr. at 45, 51. More importantly, the ALJ found that the medical records, which showed no worsening of symptoms since her layoff, indicated that Plaintiff would still be working had her company not relocated. Tr. at 28.

### C. Vocational Expert

The final piece of the ALJ's determination that Plaintiff could continue working as an order picker was the vocational expert's opinion that a person with the plaintiff's impairments could work as an order picker. In eliciting this opinion, the ALJ asked the vocational expert, Kathy Wilson, several hypothetical questions, which are paraphrased below:

In the ALJ's first hypothetical, she asked Wilson if a person could perform Whitford's past work if she had mental impairments that limited her to jobs that are unskilled, simple, "low stress." The ALJ specified that "low stress" means the job only requires an occasional change in work setting during the workday, only occasional change in decision-making required during the workday, only occasional contact with supervisors and co-workers, and production that is monitored at the end of the day as opposed to throughout the day. Tr. at 71-72. Wilson opined that a person with these limitations could do Plaintiff's previous work.

In the ALJ's second hypothetical, she asked Wilson what her opinion would be of a person with these impairments who additionally would have problems maintaining concentration for six to eight hours a day. Tr. at 72. Wilson replied that this limitation would preclude employment.

9

In the ALJ's third hypothetical, she asked Wilson her opinion of a person whose limitations would result in at least two absences a month. Tr. at 73. Wilson opined that such a person's absences would "probably be tolerated for a short period." Tr. at 73.

The ALJ then posed hypotheticals about how the need for unscheduled breaks would affect employment. Tr. at 73. To these, Wilson replied that three breaks a day would be tolerated, but more than that on a consistent basis could affect production or the work environment and therefore become a problem. Tr. at 73-74.

Plaintiff argues that Wilson's opinions cannot constitute substantial evidence because they did not "contain or reflect all of Plaintiff's impairments." (Pl's Br. at 18) The court disagrees.

An ALJ's hypothetical must account for "all of a claimant's impairments that are supported by the record" in order for it to be considered substantial evidence to support an ALJ's decision. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004) (internal citation omitted). However, an ALJ does not have to present every alleged impairment to a vocational expert in order for her testimony to be considered substantial evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). The ALJ need only present the claimant's "credibly established limitations." *Id.*

Plaintiff argues that merely reciting the type of work that Plaintiff could perform was error. Plaintiff argues that the cases *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004) and *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984) stand for the proposition that the ALJ had to list the specific limitations of the Plaintiff in order for the elicited opinion of the vocational expert to constitute "substantial evidence."

In *Podeworny,* the omission of the claimant's dizziness and blurred vision, which were medically undisputed, rendered the ALJ's hypothetical inadequate. *Id.* at 218. In *Ramirez,* the ALJ's hypothetical was inadequate because it did not fully specify the claimant's deficiency in pace, which was specifically identified by medical testimony. *Id.* at 554.

These cases are distinguishable from the instant case. Here, the ALJ took into account the specific limitations alleged by the Plaintiff in a more restrictive hypothetical. However, the ALJ dismissed these more restrictive limitations as inconsistent with the medical evidence of record and Plaintiff's daily activities. *See* Tr. at 25-26, 28-29. Indeed, if there are any other specific limitations to be included, the Plaintiff does not cite them. The limitations in the ALJ's first hypothetical

credibly established Plaintiff's limitations, as supported by substantial evidence in the record. The more specific limitations in the ALJ's other hypotheticals are not required to be credited here because the ALJ gave adequate reason in rejecting them. Thus, the vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision at step four.

### D.     CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

/s/ William J. Martini

_____

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 14, 2014**